Edward T. **SOKOWSKI, Sr.,** Appellant,

v.

Edward J. **DERWINSKI, Secretary**
of **Veterans Affairs,** Appellee.

No. 89–82.

United States Court of Veterans Appeals.

Submitted May 31, 1991.

Decided July 31, 1991.

# 76

Edward T. Sokowski, Sr., pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, were on the pleadings, for appellee.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge: ·

The veteran, Edward T. Sokowski, Sr., served on active duty from January 1942 to November 1946. According to his March 9, 1989, sworn testimony before a hearing officer at a Regional Office (RO) of the Veterans' Administration (now the Department of Veterans Affairs) (VA), R. at 67, and his application for compensation, R. at 50, he served on ship in the Pacific for from two to three years. He testified that during that time he worked outdoors on shipdeck for substantial periods of time without a shirt or hat and never received any medical treatment for sunburn and peeling from which he suffered. R. at 67, 68, 71.

In 1987, he was first treated for actinic keratoses (pre-skin cancers) on his face. Some of these developed into basal cell carcinomas and had to be removed surgically. In connection with his claim that this skin condition is service-connected, the appellant submitted letters dated January 14, 1988, and March 7, 1989, from Dr. Gerald B. Graff, a dermatologist, who stated that

the veteran had been treated for many actinic keratoses of his face, a condition resulting "from years of sun exposure [which] becomes evident in mid and later life." R. at 77. Dr. Graff stated his opinion that the "lesions result from chronic sun exposure which in [the veteran's] case would include his Navy years in the South Pacific sun." R. at 51. The appellant also submitted October 17, 1988, and March 3, 1989, letters from Dr. U.F. Biller, an otolaryngologist (a physician specializing in the "branch of medicine concerned with medical and surgical treatment of the head and neck, including the ears, nose, and throat") (*Dorland's Illustrated Medical Dictionary* 1203 (27th ed. 1988)), that the veteran's "multiple actinic keratoses ... most likely result from his chronic sun exposure which occurred during his years in the South Pacific while in the Navy." R. at 75; *see also* R. at 76.

On March 29, 1988, the VARO rating board denied service connection. R. 53. At his personal hearing on March 9, 1989, the veteran submitted sworn testimony that since service his employment had been indoors and he had spent only occasional time on the beach. R. at 70. On April 14, 1989, the hearing officer continued the denial of service connection, stating: "While the medical evidence indicates that the veteran's claimed service-connected disability actinic keratoses can result from exposure to sunlight, it would be speculative in nature to attribute the development of the actinic keratoses ... to the results of exposure to sunlight in the South Pacific during the latter stages of WWII more than 40 years preceding the treatment in 1987." R. at 78.

After receiving a supplemental statement of the case, dated May 4, 1989, R. at 80–82, the veteran sent a May 23, 1989, letter to the VARO stating:

At this point I do not understand why my claim should even be considered for denial! The V.A. has not supplied, during my hearing, any medical information to dispute my claims and the claims of the two specialists who are treating me. Would it be possible, if my claim is denied, for

you to furnish me with the medical facts to dispute my claim. If not, I would expect that my claim would be approved.

R. At 83.

On September 6, 1989, the BVA denied service connection for the veteran's skin disorder. After summarizing the evidence as set forth above, the Board stated in its "Discussion and Evaluation":

> The evidence of record indicates that the veteran was initially treated for a skin disorder, including actinic keratoses and basal carcinomas of the face, approximately four decades after service. Service medical records contain no complaints of findings pertaining to the above skin disorder, and the veteran reported that he initially received medical treatment about two years ago.

> Under the pertinent VA regulation, cancer of the skin must be shown in service or within one year subsequent to service. The evidence of record does not establish the presence of basal cell carcinomas of the face within the presumptive period.

*Edward T. Sokowski*, BVA 89–08293, at 3 (Sept. 6, 1989).

On May 6, 1991, the Secretary moved for summary affirmance, for acceptance of that motion in lieu of a brief, and for a stay of proceedings. The Secretary contended that the appellant "submitted no clinical evidence substantiating a nexus between his active military service and his current skin disability" and that "[a]ccordingly, [he] failed to demonstrate that his claim was well grounded, under 38 U.S.C. § 3007 [5107]." Motion of Appellee for Summary Affirmance at 4. The Secretary further contends that the criteria for summary disposition set forth in *Frankel v. Derwinski*, 1 Vet.App. 23 (1990) are present here. The Court agrees.

■ However, the disposition indicated here is a remand to the BVA for readjudication in accordance with *Colvin v. Derwinski*, 1 Vet.App. 171 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78 (1990); and *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990).

In *Colvin*, this Court stated:

> The BVA, in finding that the new evidence did not provide a new factual basis for a claim was, in effect, refuting the expert medical conclusions in the record with its own unsubstantiated medical conclusions. BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 [7109] (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

*Colvin*, 1 Vet.App. at 175. Here, as in *Colvin*, medical evidence contrary to the appellant's medical evidence is lacking in the instant record. Instead, the Board relied on "its own unsubstantiated medical conclusions." *Ibid.*

■ In addition, if the claimant submitted a well-grounded claim, then, under 38 U.S.C. § 5107(a) (formerly § 3007), VA was obligated to assist him in developing his claim. *See Murphy*, 1 Vet.App. at 81–82; *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991). The medical and lay evidence provided by the veteran was, as a matter of law, sufficient to establish a well-grounded claim. In this case, the duty to assist would, at a minimum, require the conduct of a VA compensation and pension examination or an independent medical examination for the purpose of evaluating the possibility of a relationship between the veteran's current skin condition and his exposure to sunlight during service. *See Green v. Derwinski*, 1 Vet.App. 121, 123–124 (1991); *Colvin*, 1 Vet.App. at 175; *Witherspoon v. Derwinski*, 2 Vet.App. 4, 4–5 (*per curiam* order, 1991); *Littke v. Derwinski*, 1 Vet.App. 90, 92–93 (1990). Moreover, as *Littke*, 1 Vet.App. at 93, holds, where the record before the BVA is inadequate, remand to the RO is required.

 A further deficiency in the BVA's decision here is its complete failure to provide "a written statement of . . . the reasons or bases for [its] findings and conclusions", as required by 38 U.S.C. § 7104(d)(1) (formerly § 4004). *See Gilbert*, 1 Vet.App. at 50–51. Although the Board concluded that a skin disorder "was not incurred in or aggravated by service", *Sokowski*, BVA 89–08293, at 3–4, it provided no reasons or bases for reaching this conclusion. Moreover, the Board seemed to believe that if evidence of cancer was not manifested during service or within one year thereafter, the subsequent claim for service-connected cancer was, as a matter of law, invalid. This is manifestly not so. VA regulations regarding "Postservice initial diagnosis of disease" provide:

> Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. **The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.**

38 C.F.R. § 3.303(d) (1990) (emphasis added).

The veteran has submitted medical evidence that his basal cell carcinomas were caused by sun exposure during his service and that the growth of a cancer could take a very long time to reveal itself. The veteran is not seeking to take advantage of the one-year presumption of service connection, but rather to demonstrate service connection directly. Since the Board failed to deal with that aspect of the claim and the applicable regulation, the Court finds that a remand is in order to permit the Board to apply the regulation to the evidence.

 Finally, the Board failed to provide its assessment of the credibility of the veteran's sworn testimony and the medical evidence he submitted. This was also error. *See Gilbert*, 1 Vet.App. at 59; *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991).

Accordingly, under this Court's precedents in *Colvin, Murphy,* and *Gilbert,* and the other cases cited above, a remand to the Board is required, and the criteria for summary disposition set forth in *Frankel* are met. This Court retains jurisdiction, the September 6, 1989, BVA decision is vacated, and the record is remanded to the BVA for readjudication and disposition in accordance with this memorandum decision. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.