Anthony COSENTINO, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–1228.

United States Court of Veterans Appeals.

July 2, 1992.

Before STEINBERG, Associate Judge.

MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, veteran Anthony Cosentino, appeals from a July 11, 1990, Board of Veterans' Appeals (BVA or Board) decision denying him an increase in his 20% service-connected disability rating and denying him entitlement to an award of service connection for stenosis of the lumbar spine, "with status post decompressive laminectomy of L4–S1". *Anthony Cosentino*, BVA 90–__ (July 11, 1990). Summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). For the reasons set forth below, the BVA decision will be vacated and the record remanded to the Board with instructions.

I.

The veteran served on active duty during World War II, from 1943 to 1945, and received several combat medals. R. at 38. He injured his back during service, and, upon filing his first claim in January 1946, complained that he could not bend over without pain. R. at 39. A 1947 physician's note stated that the veteran's "coccyx [was] severely injured and bent, causing severe pain" and that the veteran experienced "severe lumbar pains ... due to injuries to muscles and ligaments". R. at 51. In 1954, the Veterans' Administration (now Department of Veterans Affairs) (VA) awarded the veteran a non-compensable disability rating for low back strain, and in 1986 VA assigned a compensable rating of 10%. R. at 133.

In a June 9, 1987, decision, the BVA denied two claims: (1) entitlement to an increase in the disability rating for low back strain, and (2) entitlement to service connection for arthritis of the spine. R. at 126. However, based on the evaluation of evidence submitted by the veteran thereafter, in December 1987 the VA Regional Office (RO) increased the disability rating for low back strain to 20%, effective July 1, 1987. R. at 145. The only medical records explicitly considered by the RO dated from July through October 1987, and about them the RO stated: "VA [Medical Center] [records from] 7–1–87 to 10–26–87 ... [show that] the veteran complained of back and bilateral leg pain on ambulation [and

that] physical exam cit[ed] mild paraspinal muscle spasms and markedly limited forward bending". *Ibid.* Thus, the evidence relied upon by the RO included a July 1, 1987, outpatient record indicating that the veteran had complained of experiencing low back pain for forty years that had worsened over the preceding four or five years to the point where pain was radiating down both legs and preventing him from walking more than two blocks before being halted by the pain. R. at 138. The examination revealed mild paraspinal muscle spasm and markedly limited forward bending. The diagnosis was "stenosis, most pronounced [at] L4–5". *Ibid.* There was no diagnosis of low back strain. There also exists, among the VA medical records considered and discussed by the originating agency, a July 26, 1987, outpatient record indicating some of the same complaints referenced by the RO in support of its decision and making the diagnosis of "spinal stenosis". R. at 141.

After the issuance of the rating decision increasing his rating to 20%, the veteran submitted additional medical records demonstrating symptoms of and treatment for back problems. R. at 174, 177, 186. A September 2, 1987, lumbar myelogram showed calcification along the longitudinal ligament in the lower dorsal and upper lumbar region and degenerative changes in the spine at L1–L2 and L2–L3. The diagnosis was "[f]ocal spinal stenosis from degenerative changes at the level of L4 to L5." R. at 177. In January 1988, the veteran underwent back surgery at a VA facility. A radiology report preceding the operation noted degenerative joint disease of the spine and evidence of disc space narrowing and anterior and posterior osteophyte formation. R. at 194. The operation report noted a long history of degenerative arthritis of the lumbar spine; progressively developed spinal stenosis, including difficulty with walking; the need to assume a flexed position to relieve pain and numbness in the back and legs; and an inability to stand in a straight and extended position. R. at 202. The only medical records postdating the surgery which are contained in the record on appeal are brief progress notes made during the veteran's recovery from surgery. The most recent VA medical examination consists of the various reports, previously enumerated, surrounding the veteran's January 1988 back surgery. R. at 177, 194, 202. His last VA medical examination for purposes of rating his low back condition occurred in March 1986. R. at 107–12.

A March 16, 1988, letter from the veteran's service representative that accompanied the submission of medical records asserted that the back surgery—the decompression laminectomy—was "related to the veteran's service connected low back condition". R. at 149. On September 12, 1988, the RO denied service connection for a disc condition, reasoning that it was too remote from service to be related to it and too remote from service to be related to the service-connected back strain. R. at 239.

In its July 1990 decision, the Board stated that spinal stenosis was not "shown until recent years" and that the veteran had not "shown clinically" that it "began as a result of" his service-connected low back strain. *Cosentino*, BVA 90–___, at 5. The Board acknowledged that the veteran suffered from low back symptoms, including pain that radiated into his extremities, but concluded: "it is **apparent** that much of this is the result of his nonservice-connected lumbar stenosis". *Ibid.* (Emphasis added.) The Board further concluded: "[i]t is **our judgment** that the disability at issue is not currently manifested by more than moderate disability or limitation of motion". *Ibid.* (Emphasis added.) The Board then acknowledged the veteran's request for an examination—orthopedic and neurologic—but concluded that the evidence of record was adequate for its decision. In its discussion, the Board made repeated references to the fact that the veteran's injury causing the low back strain had occurred more than 40 years prior to the Board's consideration of the claim.

## II.

Under 38 U.S.C. § 7104(d)(1) (formerly § 4004) and *Gilbert v. Derwinski*, 1 Vet.

App. 49, 56 (1990), the BVA is required to include in its decisions a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law. The Board has failed to do so in this case in a number of respects. First, the Board dismissed in a cursory fashion the veteran's claim for service connection for spinal stenosis, stating only that he did not "show[ ] clinically" that it was related to his service-connected low back strain. Since the symptoms which formed the basis for the RO's 1987 decision to increase to 20% the low-back-strain disability rating had been those contained in medical records that included diagnoses of spinal stenosis (R. 138, 141–42), it is not possible for the Court to discern without an adequate statement of reasons or bases why, in 1987, VA apparently had considered the two phenomena—low back strain and spinal stenosis—as related, and why, in 1990, the BVA considered them distinct. In reaching its conclusion that the stenosis was not the result of the service-connected low back strain, the Board should have considered and discussed the applicability of 38 C.F.R. § 3.310(a) (1991), which provides in pertinent part:

> Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

The Board's failure to discuss why the veteran's spinal stenosis is not service connected under 38 C.F.R. § 3.310(a) denies the Court and the veteran the information needed to understand the basis for the Board's decision on this issue, particularly since none of the medical records in the record on appeal separate the symptoms and causes of each of the conditions at issue. *See Gilbert*, 1 Vet.App. at 56–57.

Second, the Board did not discuss the reasons or bases for its apparent conclusion that the veteran's lumbar stenosis was not an additional result of the back injury he suffered during service—a condition independent from the low back strain—rather than a condition arising from the ser-

vice-connected low back strain. *See* 38 U.S.C. § 1110 (formerly § 310); 38 C.F.R. § 3.303(a) (1991). Indeed, the Board emphasized that the lumbar stenosis was not diagnosed until over 40 years after the back injury causing low back strain, implying that the time gap between the injury and emergence of the lumbar stenosis was a factor in its rejection of the claim for service connection of the stenosis. The existence of a gap of time between service and the diagnosis of lumbar stenosis may not be dispositive of the issue of independent service connection (or secondary service connection for that matter), for such reliance violates 38 C.F.R. § 3.303(d) (1991), which provides that presumptive periods are not intended to limit service connection to diseases diagnosed within those periods. Thus, the development of a disabling condition "years after service does not eradicate the veteran's potential recovery under 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(a)". *Douglas v. Derwinski*, 2 Vet.App. 103, 109 (1992).

Third, the Board denied the appellant's claim for an increase in his existing disability rating based on its conclusion that "it is apparent that much [of his symptoms are] the result of his nonservice-connected lumbar stenosis" and based on its "judgment that" the low back strain was characterized by only "moderate" limitation. *Cosentino*, BVA 90–___, at 5. The Board did not buttress either of the above statements with independent medical evidence. A BVA conclusion is inadequate to permit effective judicial review where, as here, that conclusion is based on the Board's "own unsubstantiated medical conclusions. BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or [quoting] recognized medical treatises in its decisions". *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991); *see Sussex v. Derwinski*, 1 Vet.App. 526, 528–29 (1991). Here, the medical evidence of

record fails to provide a sufficient basis upon which to determine the symptoms of and relationship between the two back conditions. The record does not contain a recent, thorough VA examination which distinguishes between the two conditions, tests the range of motion or degree of limitation, or discusses the level of disability caused by the low back strain. *See* 38 C.F.R. §§ 4.1 (1991) (for application of rating schedule, accurate and fully descriptive medical examinations are required), 4.2 (1991) (if report of medical examination does not contain sufficient detail, it is inadequate for evaluation purposes). This leads to the last deficiency in the BVA decision.

Fourth, the Board's decision contains inadequate reasons or bases for its rejection of the veteran's explicit request, made during an informal hearing presentation to the Board on April 25, 1990 (R. 258), for a thorough medical examination prior to the Board's consideration of his claim. Under 38 U.S.C. § 5107(a) (formerly § 3007), the Secretary of Veterans Affairs (Secretary) has a duty to assist a claimant who has presented a well-grounded claim in the development of facts pertinent to the claim. *See Green v. Derwinski*, 1 Vet.App. 121, 123 (1991); *Littke v. Derwinski*, 1 Vet.App. 90, 91 (1990). The Court holds that, in light of the injuries to the veteran's back, as diagnosed in 1947 (R. 51), the establishment of service connection for low back strain, and the absence of evidence separating that condition from the lumbar stenosis, the veteran submitted a well-grounded claim, thereby triggering the BVA's duty to assist him. Consequently, the Board should have explained in more than a cursory fashion why the statutory duty to assist did not require that an examination be administered, especially in light of the 1986 date of the last VA compensation examination, the ambiguities in the medical evidence regarding the genesis of the lumbar stenosis, the ongoing problems caused by the low back strain, and the way that the RO treated the stenosis in its 1987 rating decision. *See Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Given these factors, the Board would be well advised to order such an examination, with full medical records before the examiner and a request that the examiner express opinions on the relationship between, and the degrees of disability attributable to, the two conditions. *See Witherspoon v. Derwinski*, 2 Vet.App. 4 (1991).

III.

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion for summary affirmance, it is held that the BVA has failed to articulate, as required by 38 U.S.C. § 7104(d)(1), *Gilbert*, and *Colvin*, the reasons or bases for its findings and conclusions. Therefore, the July 11, 1990, BVA decision is vacated and the record is remanded to the Board for readjudication and disposition in accordance with this memorandum decision. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (Court expects full readjudication to occur on remand, in which Board will critically reexamine evidence of record, seek additional evidence as necessary, and issue well-supported decision). The Court retains jurisdiction. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.